# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.Z.,<br><br>                Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. 2:17-cv-07046-SHK<br><br>OPINION AND ORDER |

Plaintiff A.Z.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying her application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff filed an application for DIB on June 18, 2014, alleging disability beginning on April 10, 2014.[2] Tr. 177-84.[3] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on April 26, 2016, ALJ Barbara Dunn determined that Plaintiff was not disabled. Tr. 39-46. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on July 27, 2017. Tr. 1-8. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at

---

[2] The Court observes the ALJ's notation that Plaintiff alleged disability beginning on April 1, 2014. Transcript ("Tr.") 39. The Court, however, also observes that Plaintiff alleged disability beginning on April 10, 2014, in her DIB application. Tr. 179. The Court adopts the alleged disability onset date listed in Plaintiff's DIB application.

[3] A certified copy of the Administrative Record was filed on March 8, 2018. Electronic Case Filing Number ("ECF No.") 15. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially

3

dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and

the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

**B.      Summary Of ALJ's Findings**

The ALJ determined that "[Plaintiff] met the disability insurance status requirements on her alleged onset date of April 1, 2014, but only continued to meet them through March 31, 2015." Tr. 45. The ALJ then found, at step one, that "[Plaintiff] has not engaged in [SGA] since April 1, 2014." Id. At steps two and three, the ALJ found that "[b]y and through March 31, 2015, [Plaintiff] had 'severe' impairments of multiple sclerosis and obesity, but did not have an impairment or a combination of impairments that met or equaled in severity an impairment listed at Appendix 1 to Subpart P of Regulations no. 4." Id.

In preparation for step four, the ALJ found that "[t]hrough March 31, 2015, [Plaintiff] had the residual functional capacity [("RFC")] for a full range of light work as compromised in the following respects: standing/walking limited to 4 of 8

5

hours, occasional postural maneuvers, and occasional exposure to hazards."[4]  Id.  The ALJ then found, at step four, that "[t]hrough March 31, 2015, [Plaintiff's] limitations did not preclude her from performing past relevant work [("PRW")] as an electronics assembler and telemarketer."[5]  Id.  The ALJ added that Plaintiff could perform the electronics assembler position "as she did it and/or as it is generally performed in the national economy."  Tr. 44.  The ALJ did not indicate whether Plaintiff could perform the telemarketer position as she previously performed it, or as it is generally performed.  Having concluded that Plaintiff could perform her PRW at step four, the ALJ concluded that "[Plaintiff] was not under a 'disability,' within the meaning of the . . . Act, at any time through March 31, 2015[,]" Plaintiff's date last insured.  Tr. 45.

**C.    Issues Presented**

In this appeal, Plaintiff raises four issues, including whether the ALJ erred by: (1) rejecting Plaintiff's symptom statements; (2) finding that Plaintiff's mental impairments were non-severe; (3) improperly rejecting the opinion of Plaintiff's treating physician; and (4) "making credibility judgements based on her opinion as a layperson as to Plaintiff's treatment."  ECF No. 19, Joint Stipulation at 8 (capitalization normalized).  The Court, however, does not reach these issues because the Court finds that the ALJ erred at step four when concluding that Plaintiff could perform her PRW as an electronics assembler and telemarketer.
/ / /

---

[4] The ALJ elaborated on the RFC finding in the body of the decision.  Specifically, the ALJ added that Plaintiff was limited to "occasional climbing of ladders, ropes, scaffolds, ramps, and stairs and to other postural maneuvers (e.g. balancing, kneeling, crouching, crawling, stooping, and kneeling); and <u>occasional exposure to hazards such as unprotected heights and dangerous, moving machinery</u> (not merely working with electronic parts)."  Tr. 42 (emphasis added).

[5] The ALJ elaborated in the body of the decision that "[a]s consistent with [Plaintiff's] testimony and, most clearly, with the DOT at code 299.357-195, the [VE] classified telemarketer as sedentary in exertional demands and as otherwise performable by an individual having the assessed limitations."  Tr. 44.

6

### D. ALJ's Step Four Finding Is Not Supported By Substantial Evidence.

As discussed above, the ALJ found that Plaintiff could perform her PRW as an electronics assembler and telemarketer at step four. This finding fails for several reasons. The Court addresses the ALJ's finding with respect to each occupation in turn.

#### 1. Electronics Assembler

The ALJ's finding that Plaintiff could perform her PRW as an electronics assembler fails for two reasons. First, the ALJ did not present a hypothetical question to the VE that included all of Plaintiff's limitations from the RFC. See 20 C.F.R. § 404.1545(a) (The RFC is the maximum a claimant can do despite her limitations.); see also Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) ("An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations.").

Here, Plaintiff's RFC limits her to occasional exposure to hazards, including unprotected heights and dangerous moving machinery. The ALJ's hypothetical question that was posed to the VE, however, omitted these specific types of hazards and, instead, included limitations to hazards generally. The VE responded to the ALJ's hypothetical question by seeking more information about the types of hazards that were to be avoided, but the ALJ provided no clarification. See Tr. 87-88 (the VE responding to the ALJ's hypothetical question by asking: "you know, when you're saying hazards, I think my question to you would be when they're doing soldering, they're using like a very small—like a welding device that admits heat[,]" and "[u]sually, I think of as a hazard . . . like heights and dangerous machinery.").

The ALJ's omission of the types of hazards is material, because the Electronic Assembler occupation, as it is described in the Dictionary of

7

Occupational Titles ("DOT") at 726.684-018, states that the electronic assembler occupation requires the use of potentially dangerous moving machinery, which Plaintiff can only occasionally use pursuant to her RFC. See DOT 726.684-018 (the electronic assembler occupation requires, in pertinent part, the performance of "any combination of the following tasks . . . [c]rimps, stakes, screws, bolts, rivets, welds, solders, cements, press fits, or performs similar operations to join or secure parts in place, using handtools, power tools, machines, and equipment[,]" and "[t]ends machines that press, shape, or wind component parts.").

Accordingly, because the electronic assembler occupation, as it is described in the DOT, requires exposure to the specific types of hazards that Plaintiff can only occasionally encounter, and because the ALJ's dispositive hypothetical question posed to the VE did not include those specific limitations, the ALJ's finding that Plaintiff could perform the electronic assembler occupation as it is generally performed, which was dependent on the VE's response to an incomplete hypothetical question, fails. Osenbrock, 240 F.3d at 1165. As such, the Court finds that the ALJ's step four finding that Plaintiff could perform the electronics assembler occupation as it is generally performed, was not supported by substantial evidence in the record.

Second, even assuming that the ALJ had posed a hypothetical question to the VE that included all of Plaintiff's limitations, the ALJ's step four finding, as it relates to Plaintiff's ability to perform her PRW as an electronics assembler as she actually performed the job, still fails because the VE gave conflicting testimony regarding whether Plaintiff could perform her PRW as an electronics assembler, and the ALJ failed to elicit a reasonable explanation for the conflicting testimony. See Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (An "ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence.") (citation omitted)).

Specifically, at the administrative hearing, the ALJ asked the VE the following question with respect to Plaintiff's ability to perform her PRW: "[o]kay. Could do telemarketer and could do solder as—" Tr. 88 (sentence stopped and period omitted in original). Before the ALJ had an opportunity to complete the question—and perhaps ask if Plaintiff could perform her PRW as it is generally performed, or as Plaintiff actually performed it—the VE stated "[i]n my opinion, yes." Id. The VE's previous testimony about Plaintiff's ability to perform her PRW as an electronics assembler as she actually performed it, however, contradicted this conclusion. For example, as discussed above, the ALJ asked the VE if someone with Plaintiff's limitations, including, in pertinent part, "[n]o more than occasional" exposure to "hazards[,]" could perform Plaintiff's PRW. Tr. 86. As also discussed above, the VE responded: "[i]f the hazards include something . . . that produces heat and welding, [the person] could not [perform the work of a] solderer." Id. The VE later reiterated that a person with Plaintiff's limitations "[c]ould not do the solderer. The hazards, it's . . . [o]f the solderer." Id.

This testimony is material because it establishes the VE's opinion that someone with Plaintiff's RFC cannot solder, whereas Plaintiff testified that her PRW as an electronics assembler required soldering as one of her primary duties. Specifically, Plaintiff testified at the administrative hearing that her primary duties as an electronics assembler were "assembly and . . . soldering." Tr. 57. The ALJ asked: "[s]oldering?" to which Plaintiff confirmed: "[y]eah." Tr. 57-58. Moreover, the ALJ referred to Plaintiff's PRW as an electronics assembler as the "welding" or the "soldering" job for the remainder of the hearing and the VE classified this work as "a solderer . . . under the title of electronic assembler and this is code 726.684-018." Tr. 65, 67, 82. Thus, Plaintiff's testimony from the administrative hearing, the ALJ's acknowledgement of Plaintiff's testimony, and the VE's opinion, compels a conclusion that a person with Plaintiff's limitations could not perform the work of an electronics assembler as Plaintiff actually

9

performed it, because the job as Plaintiff previously performed it requires soldering, a skill that the VE opined Plaintiff could no longer perform.

Accordingly, because the VE's conclusion that Plaintiff could perform her PRW as an electronics assembler was inconsistent with the VE's testimony that someone with Plaintiff's limitations could not perform all the duties of an electronics assembler as Plaintiff actually performed them, this inconsistency leaves a gap in the record that precludes the Court from determining whether the ALJ's decision that Plaintiff could perform her PRW as an electronics assembler as she actually performed it is supported by substantial evidence. Zavalin, 778 F.3d at 846.

### 2. Telemarketer

The ALJ's finding that Plaintiff could perform her PRW as a telemarketer fails for two reasons. First, in concluding that Plaintiff could perform her PRW as a telemarketer, the ALJ found that the VE's opinion "[wa]s consistent with [Plaintiff's] testimony and, most clearly, with the DOT at code 299.357-195[.]" Tr. 44. The VE, however, did not opine that someone with Plaintiff's limitations could perform the duties of a telemarketer as described at DOT code 299.357-195. Instead, the VE opined that someone with Plaintiff's limitations could perform the duties of a telemarketer at DOT code 299.357-014. Tr. 86. Moreover, a search for DOT code 299.357-195 yields no results.

"In determining whether appropriate jobs exist for the claimant, the ALJ generally will refer to the [DOT]." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) (citation omitted). "[T]he ALJ, however, 'may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.'" Id. (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a

determination or decision about whether the claimant is disabled." Social Security Regulation ("SSR") 00–4p (emphasis added).

Accordingly, because it is unclear from the ALJ's decision which occupation in the DOT the VE's testimony is "most clearly" consistent with, the apparent inconsistency between the ALJ's finding, the DOT, and the VE's opinion leaves a gap in the record that prevents the Court from determining whether the ALJ's decision that Plaintiff could perform her PRW as a telemarketer is supported by substantial evidence. Zavalin, 778 F.3d at 846.

Second, even assuming that there was not the above discussed gap in the record, the record also reveals that Plaintiff's work as a telemarketer was tenuous at best. For example, when asked what type of work Plaintiff did in 2005 and 2006—the time period that Plaintiff was eventually found to have worked as a "telemarketer"—rather than indicating the nature of the work Plaintiff did in that occupation, Plaintiff instead indicated that "[t]hey paid [her] off."[6] Tr. 61. The ALJ asked Plaintiff several more times throughout the hearing about the nature of the work Plaintiff performed in 2005 and 2006, and Plaintiff repeatedly stated that she could not remember, with the exception of one instance where Plaintiff stated that "in that, in that period, I'm not working. I'm at home. My husband is the one sold that—" Tr. 62-64, 66 (sentence stopped and punctuation omitted in original).

---

[6] It is unclear whether Plaintiff understood this question, or many of the other questions raised at the administrative hearing, because the hearing transcript reveals that Plaintiff lacked fluency in English, such that an interpreter was supposed to be, but was not, present at the hearing. See Tr. 54-55 (the ALJ asking: "can you speak and read basic English[,]" to which Plaintiff responded: "[n]o."); Tr. 55 (the ALJ stating: [w]ell, you can speak, you can speak English[,]" to which Plaintiff responded: [y]eah, yeah, I speak not too much."); Id. (the ALJ noting that an interpreter was supposed to be present at the hearing, but that "an invoice" was missing from "HR" and so no interpreter was present).

Plaintiff's lack of fluency in English is also noted in the ALJ's written decision, which states that Plaintiff "is able to speak some English and read basic English." Tr. 39 (citing Tr. 51-91, 177-85). The Court notes that the former finding—that Plaintiff can understand some English—is supported by the record, whereas the latter finding—that Plaintiff can read basic English—is not. As discussed above, Plaintiff testified at the hearing that she cannot read any English. Tr. 55.

11

Later in the hearing, Plaintiff's husband ("V.Z.") was called into the hearing to testify about the nature of Plaintiff's work in 2005 and 2006. V.Z. testified that he is a real estate broker and that in 2005 and 2006, he "was trying to get [Plaintiff] to work with [him]" and that "[he] was getting some clients and doing some loans, home loans for them and [he] included [Plaintiff] on [them]." Tr. 84. When V.Z. was asked if Plaintiff was "actually doing any work" on the loans, V.Z. responded that he "was training [Plaintiff] but she never actually learned the whole process" and that Plaintiff was not "actually doing any work activity" related to selling houses. Tr. 84-85. V.Z. indicated that Plaintiff was merely "[c]ontacting friends to—so [they] c[ould] process the home loans" that he secured. Tr. 85. V.Z. added that Plaintiff was not doing this work full-time. Tr. 86. Based on Plaintiff's and V.Z.'s testimony, the VE opined that "the closest [occupation] would be like telemarketer, I guess[,]" which is listed at DOT code 299.357-014. Id.

The DOT defines the occupation of telemarketer, at DOT code 299.357-014, as follows:

> [R]epresentative Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered. Quotes prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling. Keys data from order card into computer, using keyboard. May develop lists of prospects from city and telephone directories. May type report on sales activities. May contact DRIVER, SALES ROUTE (retail trade; wholesale tr.) 292.353-010 to arrange delivery of merchandise.

DOT 299.357-014 (available at: https://occupationalinfo.org/29/299357014.html) (retrieved Nov. 2, 2018) (emphasis in original).

/ / /

1  Here, Plaintiff's and V.Z.'s testimony is inconsistent with the DOT
2  description of the telemarketer occupation. Specifically, Plaintiff's testimony
3  about her work from 2005 and 2006, as she can remember it, indicates that she was
4  paid off for something; she was not working, or was working from home; and that
5  V.Z., rather than Plaintiff, was the one who sold something. Tr. 61-66. None of
6  these duties match any of the duties in the DOT description for telemarketer at
7  DOT 299.357-014. Further, V.Z.'s testimony indicates that in 2005 and 2006, he
8  was getting clients and loans as a real estate broker, which he included Plaintiff on,
9  but that Plaintiff was not actually doing any work activities with respect to the
10 client and loan acquisition portion of the business. Tr. 86. V.Z. further indicated
11 that Plaintiff was merely calling friends about loans he had already acquired, and
12 that Plaintiff was not doing this work full-time.
13     Thus, on the record before the Court, Plaintiff was not calling prospective
14 customers as DOT 299-357-014 describes. Plaintiff was calling customers that V.Z.
15 had already obtained, and these customers were friends of Plaintiff's. Plaintiff also
16 indicated that she cannot read English, and that she can only speak limited English.
17 While this would likely not present an obstacle to Plaintiff contacting clients who
18 her husband had already acquired, who were already her friends as V.Z. stated they
19 were, this would likely create obstacles to Plaintiff contacting prospective clients
20 and recording names, keying in data, and typing reports on sales activities as DOT
21 299-357-014 describes.
22     Accordingly, although the VE "guess[ed]" that the occupation of
23 telemarketer at DOT 299-357-014 was the "closest occupation" to the duties that
24 Plaintiff performed, because few, if any, of the duties that Plaintiff performed
25 match up with the duties described at DOT 299-357-014, and because the ALJ's
26 analysis relied on another DOT code and, therefore, left a gap in the record, the
27 Court finds that the Agency needs to reexamine Plaintiff's ability to perform the
28 duties of a telemarketer at DOT 299-357-014.

# IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  See <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).  On remand, the ALJ shall consider and discuss Plaintiff's ability to perform her PRW at step four.

IT IS SO ORDERED.

DATED: 11/2/2018

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge